IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Leviticus D. Young, | ) | Case No. 6:18-cv-03351-DCC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Laurens County Sheriff's Office, Don | ) | |
| Reynolds, Andrew I. Dutton, Keith | ) | |
| McIntosh, C. Martin, J. McIntosh, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 35.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action on December 12, 2018,[1] alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. [Doc. 1.] On May 6, 2019, Defendants filed a motion for summary judgment. [Doc. 35.] The next day, the

---

[1]This date reflects the date that the Complaint was entered on the docket by the Clerk of Court. The Court observes that the envelope containing the Complaint has no stamp from the prison mailroom. Additionally, it appears that the Complaint was not mailed from the prison. [Doc. 1-2.] Accordingly, Plaintiff is not entitled to benefit from the rule in *Houston v. Lack*, which held that, to protect the rights of prisoners who have no control over the processing of papers delivered to prison officials for mailing, the filing date for statute of limitations purposes is deemed to be the date that the filing is delivered to the prison mail room. 487 U.S. 266, 270–72, 276 (1988); *see also Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001) ("We join the other circuits that have addressed this issue by holding that the prison mailbox rule established in *Houston* does not apply where a *pro se* prisoner delivers his notice of appeal to someone outside the prison system for forwarding to the court clerk.").

Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 37.] Plaintiff's response in opposition was entered on the docket on July 19, 2019 [Doc. 44], and Defendants filed a reply on July 25, 2019 [Doc. 46]. Accordingly, the motion for summary judgment is ripe for review.

## BACKGROUND[2]

On January 3, 2014, Defendant Keith McIntosh and another officer arrived at Plaintiff's home with a photocopy of a photograph looking for Plaintiff. [Doc. 1 at 4.] Plaintiff was notified by his sister that officers from the Laurens County Sheriff's Office with warrants were looking for him. [*Id.*] Plaintiff had been picked out of a photo lineup on November 19, 2013, by a victim and a Laurens County Investigator based on bias and prejudice. [*Id.*] Plaintiff contacted the Laurens County Sheriff's Office about the home visit, but was unable to obtain any information concerning the investigation. [*Id.*]

On July 18, 2014, Plaintiff was arrested and detained in the Greenville County Detention Center on criminal charges. [*Id.* at 4–5.] Bail was not awarded, purportedly because Plaintiff had detainers in the Laurens County Sheriff's Office. [*Id.* at 5.] On February 3, 2015, Plaintiff was transferred to the Laurens County Sheriff's Office to have warrants served for resisting arrest, at warrant number 2014A3010100016, and for larceny/breaking into motor vehicles. [*Id.* at 5–6.] To obtain these warrants, Defendant Keith McIntosh falsely stated under oath that Plaintiff knowingly and willfully opposed

---

[2]The facts included in this Background section are taken directly from Plaintiff's Complaint. [Doc. 1.]

and/or resisted arrest and committed larceny/breaking into a motor vehicle. [*Id.*] Plaintiff was then booked into the Laurens County Detention Center on false documentation, taken before Judge Tucker, and given a $25,000 bail. [*Id.* at 6.]

Plaintiff contends he endured pain and suffering from having to walk in restraints, being slandered, and being placed in a "jail bird mug shot paper without consent," which constitutes defamation. [*Id.*] Plaintiff was then returned to the custody of Greenville County, where he later posted bail. [*Id.*] Plaintiff was placed on GPS monitoring under the custody of the Greenville County Detention Center. [*Id.* at 7.]

On April 10, 2015, Plaintiff was transferred back to the custody of the Laurens County Sheriff's Office to satisfy detainers, after which he posted a $25,000 surety bond and was released. [*Id.*] Plaintiff had to pay travel expenses to make court appearances in Laurens County. [*Id.*] Plaintiff sent a letter to his public defender, Kate Kendall, asking that she file a speedy trial motion and stating that he wanted a jury trial and refused to plead guilty to the charges. [*Id.* at 8.] On November 26, 2018, Plaintiff received mail from the public defender's office informing Plaintiff that the state had dismissed the charges against him. [*Id.*]

Based on these allegations, Plaintiff contends that his constitutional rights were violated. [*Id.*] Specifically, Plaintiff alleges the following violations: false imprisonment, slander, defamation, mental suffering, and deliberate indifference to medical needs. [*Id.* at 9.] For his relief, Plaintiff seeks a declaration that his rights were violated and money damages in the amount of $75,000, to include $50,000 in compensatory damages and $25,000 in punitive damages. [*Id.* at 11.]

3

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro.*

5

*Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to

the non-movant, he must produce existence of a factual dispute on every element essential

to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue they are entitled to summary judgment on Plaintiff's claims.  [Doc.

35.]  The Court agrees.

**Section 1983 Claims**

### *False Imprisonment*

Section 1983 actions premised on false arrest and/or false imprisonment are

analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment.

*See, e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002) (recognizing that a

plaintiff alleging a § 1983 false arrest claim needs to show that the officer arrested him

without probable cause to establish an unreasonable seizure under the Fourth

Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims

of false arrest and false imprisonment "are essentially claims alleging a seizure of the

person in violation of the Fourth Amendment").  "The Fourth Amendment is not violated by

an arrest based on probable cause."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Under

§ 1983, "a public official cannot be charged with false arrest when he arrests a defendant

pursuant to a facially valid warrant."  *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998).

Moreover, "an indictment, fair upon its face, returned by a properly constituted grand jury,

conclusively determines the existence of probable cause."  *Durham v. Horner*, 690 F.3d

183, 189 (4th Cir. 2012) (internal quotation marks omitted); *see also Provet v. South*

*Carolina*, No. 6:07-1094-GRA-WMC, 2007 WL 1847849, at *5 (D.S.C. June 25, 2007) (finding that § 1983 claims of false arrest and malicious prosecution were precluded because of the issuance of an indictment).

Here, Plaintiff was arrested pursuant to valid arrest warrants. [Doc. 35-2 at 9–13.] Further, the Court takes judicial notice that indictments were issued on the Laurens County charges against Plaintiff.[3]    Laurens County Eighth Judicial Circuit Public Index, https://publicindex.sccourts.org/Laurens/PublicIndex/ (click "Accept" and search by Plaintiff's first and last name) (last visited Nov. 6, 2019).    Accordingly, the motion for summary judgment should be granted with respect to Plaintiff's § 1983 claim for false imprisonment.[4]

---

[3]It is appropriate for this Court to take judicial notice of Plaintiff's state court cases. *See Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

[4]The Court is unconvinced by Plaintiff's argument that he was the "wrong person" and that "[t]here is no evidence connecting [him] to any of the warrants issued on his behalf." [Doc. 44 at 4, 5.]  Plaintiff relies on *Smith v. Munday*, 848 F.3d 248 (4th Cir. 2017), to argue that he was arrested without probable cause. [Doc. 44 at 4–5.]  However, in *Munday*, the Fourth Circuit concluded that the officer's knowledge that the plaintiff "had previously been convicted for selling drugs . . . , that she was a black woman, and that she was 'near' the site of the drug sale because her home address was eleven miles away" was insufficient to establish probable cause to arrest her for possession with intent to sell and distribution of a controlled substance.  848 F.3d at 254.  In contrast, here, Plaintiff's name appeared in paperwork that was recovered from a stolen vehicle, a photo lineup was then obtained because Plaintiff's physical description matched the person that had fled on foot from a Laurens County officer on the night the cars were broken into, and both a victim and the officer identified Plaintiff as the person they had seen on the night of the break-ins. [Doc. 35-2 at 3–8.]

***Deliberate Indifference to Medical Needs***

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one[5] and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, 425 F.

---

[5] "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind. 1981)).

App'x 202, 204 (4th Cir. 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).  As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.  "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson*, 501 U.S. at 297 (emphasis and alteration in original) (citations omitted).[6]  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817).  The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation.  *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, Plaintiff's Complaint contains no specific factual allegations regarding his claim for deliberate indifference to his medical needs.  Instead, he alleges only that he experienced pain and suffering from walking in restraints [Doc. 1 at 6] and then conclusorily

---

[6]"A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Abraham v. McDonald*, 493 F. App'x 465, 466 (4th Cir. 2012) (internal quotation marks omitted).

asserts that Defendants were deliberately indifferent to his medical needs [*id.* at 9]. As argued by Defendants, these allegations fail to rise to the level of a constitutional deprivation of medical care. Although Plaintiff asserts that he needs discovery to gain information related to his deliberate indifference claim [Docs. 44 at 12–13; 44-1], discovery would not benefit Plaintiff in this case because the Complaint fails to even state a claim of deliberate indifference to medical needs. Plaintiff has failed to allege that he suffered from any serious medical condition or that any prison official failed to provide him with medical treatment. Accordingly, the motion for summary judgment should be granted with respect to Plaintiff's § 1983 claim for deliberate indifference to medical needs.[7]

### Qualified Immunity

Defendants are also entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an

---

[7]Although the "liberal pleading requirements of Rule 8(a) demand only a 'short and plain' statement of the claim[, a] plaintiff often must offer more detail . . . than the bald statement that he has a valid claim of some type against the defendant." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). Even with respect to a pro se complaint, a plaintiff must do more than make mere conclusory statements to support his claim. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (dismissing a complaint where it "failed to contain any factual allegations tending to support [the plaintiff's] bare assertion"). It is well settled that federal courts performing their duties of construing pro se pleadings are not required to be "mind readers" or "advocates" for pro se litigants. *See Beaudett*, 775 F.2d at 1278; *Leeke*, 574 F.2d at 1151. Plaintiff's Complaint fails to allege facts sufficient to support a deliberate indifference to medical needs claim, and thus, this claim should be dismissed.

objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether a defendant is entitled to qualified immunity, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the

court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated his constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**State Law Claims**[8]

### *False Imprisonment*

Under South Carolina law, to prevail on a claim for false arrest or imprisonment, a plaintiff must prove both that he was deprived of his liberty and that the deprivation was done without lawful justification. *Jones v. City of Columbia*, 389 S.E.2d 662, 663 (S.C. 1990). Stated differently, a plaintiff must show that "(1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." *Law v. S.C. Dep't of Corrs.*, 629 S.E.2d 642, 651 (S.C. 2006).

Here, to the extent Plaintiff seeks to raise a cause of action under South Carolina law for false imprisonment, such claim is without merit because, as stated above, Plaintiff cannot show that he was arrested without probable cause. Accordingly, the motion for summary judgment should be granted with respect to Plaintiff's state law false imprisonment claim.

---

[8]Plaintiff's Complaint does not specify that he is bringing any claims under state law; however, because the parties have addressed potential state law claims [Docs. 35-1 at 10; 44 at 13–15; 46 at 2], the Court addresses these claims as well.

14

### *Slander and Defamation*

To prove a cause of action for defamation in South Carolina,[9] a plaintiff must show:

"(1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). "Slander is spoken defamation." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134 (S.C. 1999). "[U]nder longstanding South Carolina case law, contents of governmental records—such as judicial proceedings, case reports, published cases, investigative reports, or arrest records—do not give rise to liability for slander or libel." *Williams v. South Carolina*, No. 0:06-2590-CMC-BM, 2006 WL 3843608, at *6 (D.S.C. Dec. 22, 2006) (holding that the plaintiff could not state a defamation claim based on a criminal charge brought against him). Accordingly, the motion for summary judgment should be granted with respect to Plaintiff's slander and defamation claims.

### *Intentional Infliction of Emotional Distress*

Under South Carolina law, to recover for intentional infliction of emotional distress, a plaintiff must establish that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;

---

[9]The Court addresses Plaintiff's claims as state law slander and defamation causes of action because an alleged act of defamation of character or injury to reputation is not actionable under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. 693, 711–12 (1976). Civil rights statutes, such as 42 U.S.C. § 1983, do not impose liability for violations of duties of care arising under a state's tort law. *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991).

(2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"

(3) the actions of the defendant caused plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."

*Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 70–71 (S.C. 2007) (quoting *Ford v. Hutson*, 276 S.E.2d 776, 778 (S.C. 1981)). Here, Plaintiff's Complaint contains no specific factual allegations regarding his claim for intentional infliction of emotional distress. Indeed, it is not clear that Plaintiff asserts this claim; however, out of an abundance of caution the Court has construed Plaintiff's claim for "mental[] suffering" as attempting to state a claim for intentional infliction of emotional distress. However, other than stating that he experienced mental pain and suffering, Plaintiff's Complaint includes no other allegations regarding this claim. Accordingly, the motion for summary judgment should be granted with respect to Plaintiff's claim for intentional infliction of emotional distress.[10] *See supra*, note 7.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 35] be GRANTED.

---

[10]Because the Court finds that Defendants are entitled to summary judgment on each of Plaintiff's potential state law claims for the reasons discussed above, the Court declines to address Defendants' alternative arguments regarding the state law claims.

16

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

November 8, 2019
Greenville, South Carolina